## N. Y. SUPREME COURT.

GILBERT J. BOGERT, appellant, agt. LIVONIA A. GULICK, respondent.

1. A married woman conducting a separate business in her own name and on her own account through or by her husband as her agent, in which business notes were issued payable at a bank for the purpose of that business, is not liable on a note issued by such agent in her name, which was diverted from or not used in that business, even at the suit of a *bona fide* holder, who took the note under the representation that the note arose on a fair business transaction.

2. It does not help the holder of said note to show that the wife conducted business on her own account and in her own name, nor that her husband, as her agent, carried on the same, nor that the representations as to the business character of the note in question were made to the plaintiff. It comes back to this, was the note made or negotiated in respect to the business or separate estate of the defendant? If not, it is void. The legal incapacity of married women to make valid contracts is the same now as it was before our late statutes, unless the contracts relate to their business or separate estate. Except as to her business and her separate estate, the attempted obligations of a married woman are void.

*General Term, First District.*

*Before* INGRAHAM *and* FANCHER, *JJ.*

THIS is an action on a promissory note for $395.81, dated New York, 8th July, 1869, at four months, to order of M. J. O'Leary & Co., and indorsed by them and Henry B. Ogden and Timothy Cohalen.

The defendant's name was signed to the note by her husband as her agent. The defendant then was and still is a married woman, the wife of Egbert Gulick.

The note was made and handed to Timothy Cohalen, to be by him delivered to the Travelers' Insurance Co., in payment of the first annual premium, for an insurance policy on the

life of Egbert Gulick, to be issued by said company to said Egbert Gulick, in case that company, who had examined said Gulick, should conclude to issue said policy. No policy was issued. Cohalen diverted the note to his own use.

No consideration whatever was received by defendant for said note, nor was it, nor were the proceeds, applied to the benefit of the defendant's separate estate, or used in her business. She conducted in her own name the business of malting grain at Starkey, Yates county; but was never indebted to Ogden or Cohalen.

Such business was carried on for her by her husband, as her agent. In that business her notes were sometimes made, and were payable at the First National Bank of Canandaigua, where she kept her bank account. The plaintiff purchased the note before maturity, and at the time of such purchase the holder represented to him that the note was a *bona fide* note, given for a fair business transaction. The plaintiff had no notice of the facts touching the origin of the note.

It is also found by the court below that the husband and agent of the defendant came down, with the consent of his wife (the defendant), to get his life insured; that he was examined, and the agents of the company told him they would insure him for five years, but would consult over insuring him for life; that he made this note and gave it to Cohalen, who acted as the agent of the husband for procuring on his behalf the policy, and who had introduced him to the company, as the payment for the first year's premium, and *Cohalen was to forward to him the policy.* When the husband returned home he informed his wife of what he had done, to which she made no objection. The policy was not issued nor forwarded to him, but the note was converted by Cohalen to his own use and sold to the plaintiff, who took the same without notice of the want of consideration thereof or of its misapplication.

The judge at the circuit dismissed the complaint, to which the plaintiff excepted, and after judgment he appealed.

DENNIS McMAHON, *for the appellant*, contended:

1. That the respondent, although a married woman, was engaged in a business as manufacturer of malt, in Starkey, Yates county, N. Y., which was carried on for her and in her name, by her husband, as her agent. Notes were given by such agent in the usual course of business, payable at the Canandaigua banks.

2. By the express provisions of the acts of 1860 and 1862, although a married woman, yet for the operation of that business she would be treated as a *feme sole*, and subject to all the liabilities of a single woman of competent age (*Com. Ed. Ins. Co.* agt. *Babcock*, 42 *N. Y. R., p.* 626 ; *Abbey* agt. *Deyo*, 44 *id., p.* 343 ; *Adams* agt. *Curtis*, 4 *Lansing, p.* 164).

3. She had a right to employ her husband as her general agent in that business. If she were a *feme sole* as to that business, her husband, as her agent, was like unto any general agent of a person competent to contract. His acts within the scope of his agency would bind her (*Owen* agt. *Cawley*, 36 *N. Y. R., p.* 600).

4. If a note was issued by such husband, as her agent in her name, payable at the same bank as the notes used in that business were made payable at, in a *bona fide* holder's hands, such note ought to be good, even though it subsequently appeared that the same was not issued for the benefit of the said business.

Because :

1st. The acts of 1860 and 1862, as to that business, say she is a *feme sole*. Notes in her name were customarily issued for the purposes of that business.

2d. How could a *bona fide* holder tell what are not the notes issued in the business or out of it, if on their face they bear the same external *indicia ?*

5. A married woman carrying on a separate business cannot be considered a *feme sole*, so far as her obligations are concerned, notwithstanding the express language of the acts

of 1860 and 1862, if in a *bona fide* holder's hands her notes are invalidated because of the coverture.

6. If she were a single woman of competent age carrying on that business through an agent, she would be liable on her note issued by such agent (if it was the usual course of her business for her agent to issue such notes), which note had got into a *bona fide* holder's hands, even though diverted from the intended purpose of its issue (*Rockwell* agt. *Charles*, 2 *Hill*, 499; *Wardell* agt. *Hughes*, 3 *Wend.*, 418; *Purchase* agt. *Mattison*, 6 *Duer*, 587; *Coddington* agt. *Bay*, 20 *Johns.*, 637; *Watson* agt. *Cabot*, 5 *Sandf.*, 423).

7. Then if the statute makes her a *feme sole*, her liability would be the same as that of a *feme sole*. Any other construction would invalidate the statute and its beneficial operation.

8. The case at bar, so far as the diversion of the note and the failure of consideration is of no consequence if the respondent be considered a *feme sole* as to her separate business; otherwise the policy of the law will be frustrated.

A case is here presented of a general agent issuing mercantile paper, on its face of a business character, thereby imposing on the public; and the principal then seeking to escape from its recovery in the hands of a *bona fide* holder by proof that the note was that of a married woman, issued without consideration or benefit to her separate estate (*see opinion of* GROVER, *J.*, *p.* 233, 46 *N. Y.*, *Warner* agt. *Warner*). The policy of the law would rather be that a married woman who conducts a separate business, in which she issues such paper, is bound by the same in the hands of *bona fide* holders as other business people are.

9. The facts found show that the note in question had a business inception, viz., made to pay an annual premium on a life policy to be issued. This was done by the authority of the wife, viz.:

(a.) She knew her husband was coming down to get his life insured and consented to it.

(*b.*) When he told her what he had done, viz., giving the note, &c., she did not object to it (*Hanson* agt. *American T. L. and S. I. Co.*, 46 *N. Y.*, at 674).

That insurance was a matter of benefit to the wife, being of her husband's life; it benefited her separate estate. Also, because her husband conducted the separate business of the wife as her agent. The wife has always an insurable interest in her husband's life (*Baker* agt. *Mutual Insurance Co.*, 43 *N. Y.*, 282).

J. W. FEETER, *for respondent.*

I. The defendant being a married woman, a promissory note made by her is void.

The negotiable promissory note of a *feme covert* is absolutely void (*Vandenburgh* agt. *Hoffman*, 15 *Barb.*, 28; *Edwards on Bills*, 66–68). The statutes of 1848–49 do not remove the incapacity which prevents her from contracting debts; her promissory note is void, as it always was, by the rules of the common law (*Yale* agt. *Dederer*, 18 *N. Y.*, 272, 273).

II. The provisions of the acts of 1849 and 1860 show that the legislature has not even now intended to remove the common law disability of married women to bind themselves by their contracts at large.

To be obligatory upon them or their estates under our latest statute, their contracts must relate entirely to their separate property, or to the particular trade or business in which they are engaged. The intention to charge the separate estate must be stated in the contract itself, or the consideration must be one going to the direct benefit of the estate (*Yale* agt. *Dederer*, 22 *N. Y.*, 460; *Corn Exchange Bk.* agt. *Babcock*, 42 *id.*, 632; *see* EARL's *opinion*, 642).

Note of married woman, not given for benefit of her separate estate, cannot by parol be made a charge upon it (*Deck* agt. *Johnson*, 2 *Keyes*, 348).

Bogert agt. Gulick.

FANCHER, *J.*—The defendant did not, on the face of the note, charge in express terms her separate estate. The case of *Corn Exchange Insurance Company* agt. *Babcock* (42 *N. Y.*, 613) is not, therefore, authority against her defense. Had she made the note a charge on her separate estate, by its terms she might, perhaps, be estopped from asserting that it was not given for the benefit of her separate estate (*Todd* agt. *Ames*, 60 *Barb.*, 462; *Foster* agt. *Conger*, 61 *id.*, 147). The note itself bears no evidence that the defendant charged or, intended to charge her separate estate.

It is clear, upon the evidence, that the note was not used in reference to or for the benefit of the business or separate estate of the defendant. It does not help the plaintiff to show that she conducted business on her own account and in her own name, nor that her husband as her agent carried on the business, nor that the representations as to the business character of the note in question were made to the plaintiff. It comes back to this, was the note made or negotiated in respect to the business or separate estate of the defendant? If not, it is void? The legal incapacity of married women to make valid contracts is the same now as it was before our late statutes, unless the contracts relate to their business or separate estates.

Except as to her business and her separate estate, the attempted obligations of a married woman are void.

By virtue of the statutes of 1860 and 1862, relative to the rights of married women (*Laws of* 1860, *chap.* 90; *Laws of* 1862, *chap.* 172), a married woman may make bargains, carry on trade or business, and perform labor and services, on her own account, and for her exclusive benefit, as if she were unmarried, and all her earnings belong to her as her sole and separate property (*Foster* agt. *Conger*, 61 *Barb.*, 145). But except in the instances where the transactions concern her separate business or her separate estate, her obligations are void.

This principle has been often asserted (*House* agt. *De Witt*,

Bogert agt. Gulick.

63 *Barb.*, 53; *Vandenburg* agt. *Hoffman*, 15 *id.*, 28; *Edwards on Bills*, 66, 68). Our statutes have not removed from married women their common-law disabilities, except as to their transactions in their separate business or relating to their separate estates (*Yale* agt. *Dederer*, 22 *N. Y.*, 460; *Corn Exchange Insurance Co.* agt. *Babcock*, 42 *id.*, 639; *Deek* agt. *Johnson*, 2 *Keyes*, 348).

The evidence fully warranted the finding of the court, that the note in question was not made or given in any business of the defendant; that neither she nor the separate estate derived any benefit therefrom; that no consideration was received by her for the note; that it is not stated in the note that she charged or intended to charge her separate estate with the payment thereof; that the policy was not issued, to procure which the note was made, and that it was diverted from its intended use by Cohalen, who, for his own benefit, sold it to the plaintiff.

It follows, from these facts, that the note never had any validity or legal inception, and it is absolutely void. At common law a married woman cannot be a party to a bill or note, and the contracts she is enabled by statute to make are such only as are made in the business she conducts on her own account or such as relate to her separate property.

She is not entitled to give an accommodation note, nor one unconnected with her separate business or property, and a person taking such a note, though *bona fide*, and for value, cannot recover upon it against her (*Corn Ex. Ins. Co.* agt. *Babcock*, 57 *Barb.*, 227; *Scudder* agt. *Gove*, 18 *Abb. Prac. R.*, 223; *House* agt. *De Witt*, 63 *Barb.*, 53; *Kelso* agt. *Taber*, 52 *id.*, 125, 129).

The judgment appealed from should be affirmed, with costs.